UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABDOULAYE TRAORE,<br><br>                  Plaintiff,<br><br>v.<br><br>POLICE OFFICER FRANK LAQUIDARA, Shield # 10967 and POLICE OFFICER MICHAEL KING of the 24th Precinct,<br><br>                  Defendants. | 11 Civ. 3486 (SAS)<br><br>**SECOND AMENDED COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff Abdoulaye Traore ("Traore" or the "Plaintiff"), by his attorneys, Milbank, Tweed, Hadley & McCloy LLP, hereby complains and alleges against Defendants Police Officer Frank Laquidara and Police Officer Michael King (collectively, the "Defendants") as follows:

## NATURE OF THE ACTION

1.    This action seeks monetary damages to redress the harms suffered by Plaintiff when he was physically assaulted, falsely arrested and imprisoned, denied medical treatment, and maliciously prosecuted by the Defendants. The claims asserted herein, which Plaintiff brings pursuant to 42 U.S.C. § 1983, include numerous violations and deprivations by Defendants of Plaintiff's constitutional rights.

## JURISDICTION

2.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. Plaintiff institutes this action and invokes the jurisdiction of this Court to recover compensatory and punitive damages and the costs of the suit, including reasonable attorneys' fees, suffered by Plaintiff and caused by Defendants in violation of Plaintiff's rights as

guaranteed by the Constitution of the United States and by federal law, in particular 42 U.S.C. § 1983.

## VENUE

3.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## PARTIES

4.  Plaintiff Abdoulaye Traore is a citizen of the State of New York and, at all times relevant to this action, was a resident of the City of New York. Traore is currently an inmate confined at Collins Correctional Facility in Collins, New York, under the custody of the New York State Department of Corrections.

5.  Defendant Police Officer Frank Laquidara was, at all times relevant to this action, employed by the City of New York as a police officer and assigned to the 24th Precinct.

6.  Defendant Police Officer Michael King was, at all times relevant to this action, employed by the City of New York as a police officer and assigned to the 24th Precinct.

7.  Traore is informed and believes, and on that basis alleges, that at all times relevant herein, both Defendant police officers were acting under the authority or color of New York State law.

## FACTUAL ALLEGATIONS

8.  At the time of the incidents at issue in this lawsuit, Traore was employed as a custodial maintenance assistant at the City College of New York where, on average, he worked between 40 and 60 hours a week. In the early morning hours of Saturday, June 27, 2009, after leaving Jake's Dilemma, a bar located on the Upper West Side of Manhattan at West 80th Street

and Amsterdam Avenue, Traore headed to a corner store located just a few blocks from his home for a sandwich before he planned to go home for the evening. Unfortunately, as described below, Traore never got home that evening. Instead, through no fault of his own, Traore found himself physically assaulted, falsely arrested and imprisoned, denied medical treatment, and maliciously prosecuted by the Defendants.

9. At approximately 2:45 AM on June 27, 2009, Traore was standing alone outside a corner store at West 94th Street and Amsterdam Avenue waiting for a sandwich that he had ordered inside the store. While waiting outside, Traore was smoking a cigarette and listening to his iPod. After he had been waiting for five to ten minutes, a marked New York City Police Department van pulled up directly in front of the corner store. Defendants—two uniformed police officers of the New York City Police Department—emerged from the van, approached Traore, restrained him, and pushed him against the wall of a building. Defendants did not tell Traore why he was being restrained.

10. Upon approaching Traore, Defendant Laquidara pushed Traore's chest, grabbed Traore on his left shoulder to turn him around, and pushed him against the wall of a building. Defendants searched Traore's pockets and removed all items.

11. As Defendants were conducting the search, Traore's head was against the wall with Defendant Laquidara's hand on the back of Traore's head. While Defendant King held Traore, Defendant Laquidara repeatedly rammed Traore's head into the wall of the building, resulting in injuries to Traore's face and head.

12. As this was taking place outside the store, the corner store employee who had been making Traore's sandwich came out of the store and said to the Defendants, in substance, "No, no, no, no, he [*i.e.*, Traore] was not part of the fight." Traore also heard the corner store

employee tell the Defendants that they could watch a video of "the fight" inside the store. Other unidentified police officers on the scene went into the store.

13. Nevertheless, Defendants arrested Traore and charged him with, among other charges, attempted robbery in the first degree, assault in the second degree, and criminal possession of a weapon in the third degree.

14. To Traore's knowledge, he was never identified by any victim or victims as engaging in any criminal conduct relating to any such incident.

15. Defendants had no probable cause to arrest Traore.

16. Following the arrest outside the corner store, Defendants transported Traore to the 24th Precinct stationhouse, where he was placed in a holding cell. Traore asked Defendants for medical attention stemming from the injuries he had sustained to his head and face, but Defendants refused to provide him with any medical attention.

17. A few hours later, Defendants Laquidara and King came to Traore's holding cell and demanded that he remove his clothing so they could conduct a search. When Traore resisted, Defendant Laquidara physically and verbally threatened him, and attempted to forcibly remove his clothing, resulting in further injuries. After Traore's clothing had been removed, Defendants took photographs of him and certain articles of his clothing. At this time, Traore again asked Defendants for medical attention, and Defendants again refused his request.

18. At approximately 7:00 AM that morning, Traore was transported to Central Booking at 100 Centre Street in New York City, where he was arraigned on the charges of assault in the second degree, assault in the third degree, and criminal possession of a weapon in the fourth degree. A judge set Traore's bail at $2,500.

19. Traore was arraigned on these charges even though, as discussed above, he had not engaged in any of the criminal conduct for which he was arrested and Defendants did not have probable cause to make the arrest.

20. Traore was thereafter transferred to and placed in confinement by the New York City Department of Correction at Rikers Island Detention Center in East Elmhurst, New York. He was falsely imprisoned at Rikers Island from June 27, 2009 until on or about July 7, 2009, when he posted bail and was released.

21. Following Traore's release, on or about July 7, 2009, he registered a civilian complaint report against Defendant Laquidara with the Civilian Complaint Review Board. Traore stated in his report that Defendant Laquidara "used excessive force before and after the [June 27, 2009] arrest of [Traore], by ... physically ramming the head of Mr. Traore into the corner of the building located on 94th & [A]msterdam [A]ve, (many time[s]), [and] [Traore] was also denied medical attention. [Defendant] Officer Laquidara continued to use excessive force through out search in the precinct [stationhouse]." Also on July 7, 2009, Traore registered a similar complaint report with the 24th Precinct.

22. On October 15, 2009, the New York County Criminal Court dismissed all charges against Traore for which he had been arrested and detained on June 27, 2009.

23. As a result of Traore's false arrest and imprisonment, which caused him to miss approximately 10 days of work as a custodial maintenance assistant at the City College of New York, he was terminated from his employment. Traore's repeated attempts to find steady new employment following his release from Rikers Island Detention Center on or about July 7, 2009 were unsuccessful.

24. Based on the misconduct described above, Defendants used excessive force against Traore, falsely arrested and imprisoned him, denied Traore medical treatment, and maliciously prosecuted Traore in violation of his constitutional rights. Consequently, Defendants are liable to Traore for, among other things, compensatory and punitive damages.

## CLAIM FOR RELIEF

### (Civil Action for Deprivation of Rights)

### (42 U.S.C. § 1983)

25. Paragraphs 1 through 24 are incorporated by reference as if fully set forth herein.

26. Defendants, acting under color of state law, willfully, intentionally, knowingly, and in concert subjected Traore to excessive use of force, false arrest, denial of medical treatment, and malicious prosecution. Defendants deprived Traore of rights, privileges, and immunities secured by, among other things, the United States Constitution and the laws of the United States, including the Fourth and Fourteenth Amendments to the United States Constitution.

27. At all times relevant herein, Defendants acted with a callous and reckless indifference to Traore's federally protected constitutional rights.

### Excessive Use of Force

28. Paragraphs 1 through 27 are incorporated by reference as if fully set forth herein

29. The Defendants have violated 42 U.S.C. § 1983 by denying Traore his rights secured by the Fourth Amendment to the United States Constitution through the use of excessive force in the course of their arrest and detention of Traore.

### False Arrest

30. Paragraphs 1 through 29 are incorporated by reference as if fully set forth herein.

31. The Defendants have violated 42 U.S.C. § 1983 by denying Traore his rights secured by the Fourth Amendment to the United States Constitution by intentionally confining Traore without his consent and without justification, due to a lack of probable cause.

### Denial of Medical Treatment

32. Paragraphs 1 through 31 are incorporated by reference as if fully set forth herein.

33. The Defendants have violated 42 U.S.C. § 1983 by denying Traore his rights secured by the Fourteenth Amendment to the United States Constitution through their deliberate indifference to Traore's serious medical condition.

### Malicious Prosecution

34. Paragraphs 1 through 33 are incorporated by reference as if fully set forth herein.

35. The Defendants have violated 42 U.S.C. § 1983 by denying Traore his rights secured by the Fourth Amendment to the United States Constitution by maliciously initiating the prosecution against Traore, despite a lack of probable cause for commencing the proceeding, which was eventually terminated in Traore's favor.

### PRAYER FOR RELIEF

**WHEREFORE**, Traore respectfully requests that the Court enter judgment as follows:

(a) Awarding compensatory damages to Traore in an amount to be determined at trial;

(b) Awarding punitive damages to Traore in an amount to be determined at trial;

(c) Awarding Traore the costs, attorneys' fees, and other expenses of this action; and

  (d) Awarding Traore such other and additional relief as this Court deems just and proper.

Dated: September 27, 2012
   New York, New York

           MILBANK, TWEED, HADLEY & MCCLOY LLP

          By: /s/ Seth M. Zoracki
          Sander Bak (SB 2263)
          Hailey DeKraker (HD 2106)
          Seth M. Zoracki (SZ 1562)
          1 Chase Manhattan Plaza
          New York, New York  10005-1413
          (212) 530-5000
          (212) 530-5219 (facsimile)
          sbak@milbank.com
          hdekraker@milbank.com
          szoracki@milbank.com
          *Attorneys for Plaintiff Abdoulaye Traore*